IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VIOLA M. HERRERA,

        Plaintiff,

v.                                                  CIV-05-0068 LAM

JO ANNE BARNHART,
Commissioner of the Social Security Administration,

        Defendant.

# **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision* (*Doc. 9*). In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion and her memorandum in support of the motion (*Doc. 10*), Defendant's response to the motion (*Doc. 11*), Plaintiff's reply to the response (*Doc. 12*), the pleadings filed in this case and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record (hereinafter "*Record*" or "*R*."). For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and this case **REMANDED** to the Commissioner of the Social Security Administration (hereinafter, "Commissioner") for further proceedings consistent with this Memorandum Opinion and Order.

## I.  Procedural History

On February 6, 2001, Plaintiff, Viola M. Herrera, applied for disability insurance and supplemental security income benefits. (*R. at 52-54, 259-261.*)  In connection with her applications, Plaintiff alleged a disability since January 1, 2001.  (*R. at 52, 259.*)  In connection with her applications, she alleged a disability due to problems with walking and standing and having to crawl. (*R. at 66.*)   Plaintiff's applications were denied at the initial and reconsideration levels. (*R. at 28, 29, 262, 268.*)

An administrative law judge (hereinafter "ALJ") conducted a hearing on March 21, 2002. (*R. at 272-297.*)  Plaintiff was present and testified at the hearing. (*R. at 272, 275-287, 292-293.*) Plaintiff was represented by counsel at the hearing.  (*R. at 272, 274.*)  Plaintiff's daughter, Brenda Herrera, testified at the hearing (*R. at 272, 288-291*), and a vocational expert, Judith Beard, also testified at the hearing (*R. at 291-296* ). On September 6, 2002, the ALJ issued his decision in which he found that Plaintiff was disabled at step five of the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920, with an onset date of disability of August 2, 2001.  (*R. at 22-23.*)  The ALJ made the following findings, *inter alia*, with regard to Plaintiff: (1) she met the disability insured status requirements of the Social Security Act through December 31, 2003; (2) she had not engaged in substantial gainful activity since the disability onset date; (3) she had an impairment or combination of impairments considered "severe," based on the requirements in the Social Security regulations;[1] (4) her impairments did not meet or medically equal one of the listed

---

[1]Under relevant Social Security regulations, an impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c).  The ALJ found that Plaintiff had the following impairments considered "severe" under the regulations: major depression, post-traumatic stress disorder, and a pain disorder.  (*R. at 18, 21.*)

impairments in Appendix 1 to Subpart P of Part 404; (5) her allegations regarding her limitations were not totally credible for the reasons set forth in the decision; (6) prior to August 2, 2001, she had the residual functional capacity (hereinafter "RFC") to lift ten pounds frequently and twenty pounds occasionally, to sit for six hours in an eight hour day, to stand and walk for six hours in an eight hour day, to perform simple repetitive tasks at a competitive rate but not deal with the public, to have only brief superficial interaction with co-workers and supervisors, and the need to avoid concentrated exposure to extremes of cold, wetness and noise; (7) since August 2, 2001, she had been unable to perform sustained work at any exertional level; (8) she was unable to perform any of her past relevant work; (9) she was "an individual closely approaching advanced age," as defined in 20 C.F.R. §§ 404.1563 and 416.963;[2] (10) she had a "limited education," as defined in 20 C.F.R. §§ 404.1564 and 416.964;[3] (11) she had no transferable skills from any past relevant work and/or transferability of skills was not an issue in the case; (12) prior to August 2, 2001, she had the RFC to perform a significant range of light work;[4] (13) although her exertional limitations did not allow her to perform the full range of light work, using Medical Vocational Rule 202.10 as a framework for decision-

---

[2]A person "closely approaching advanced age" is defined in the regulations as a person aged fifty to fifty-four. *See* 20 C.F.R. §§ 404.1563(d) and 416.963(d).

[3]Under the regulations, a seventh through eleventh grade level of formal education is generally considered a "limited education." *See* 20 C.F.R. §§ 404.1564(b)(3) and 416.964(b)(3).

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

making, there were a significant number of jobs that she could perform;[5] (14) since August 2, 2001, she had been unable to perform a significant number of jobs; and (15) she had been under a "disability," as defined in the Social Security Act, since August 2, 2001, but not prior to that date. (*R. at 21-22.*) With regard to her application for disability insurance benefits, the ALJ concluded that Plaintiff was entitled to a period of disability beginning August 2, 2001, and to disability insurance benefits pursuant to the Social Security Act. With regard to her application for supplemental security income benefits, the ALJ concluded that Plaintiff had been disabled since August 2, 2001, and that her disability had continued through at least the date of his decision on September 6, 2002. (*R. at 23.*) The ALJ recommended that a continuing disability review be carried out within two years of his decision, and that a representative payee be appointed to manage payments in Plaintiff's best interest. *Id.*

After the ALJ issued his decision, Plaintiff filed a request for review of the ALJ's decision. (*R. at 10-12.*) On November 29, 2004, the Appeals Council issued its decision denying her request, making the ALJ's decision the final decision of the Commissioner in her case. (*R. at 7-9.*) On January 21, 2005, Plaintiff filed her complaint in this action. *See* **Complaint** (*Doc. 1.*)

---

[5]The ALJ gave the following as examples of the jobs that Plaintiff could perform: Laundry Sorter, an unskilled light position with six-hundred jobs regionally; Office Cleaner, an unskilled light job with seven thousand positions regionally; and Ware Cleaner, an unskilled light job with four hundred positions regionally.

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y. of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *See, e.g., Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  This Court's assessment is based on a meticulous review of the entire record, where the Court can neither re-weigh the evidence nor substitute its judgment for that of the agency.  *See Hamlin*, 365 F.3d at 1214; *see also Langley*, 373 F.3d at 1118.  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation omitted); *see also Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760.  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation omitted); *see also Hamlin*, 365 F.3d at 1214.

For purposes of disability insurance and supplemental security income benefits, a person is considered to be disabled if he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 [twelve] months."  42 U.S.C. § 423(d)(1)(A) and 42 U.S.C. § 1382c(a)(3)(A), respectively.  A five-step sequential evaluation process has been established for evaluating a disability claim.  *See*

*Bowen v. Yuckert*, 482 U.S. 137, 137 (1987); *see also* 20 C.F.R. §§ 404.1520 and 416.920.  At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment; that he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; and that either his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Pt. 404, Subpt. P, App. 1,[6] or that he is unable to perform work that he has done in the past.  *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988).  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering his RFC, age, education, and work experience.  *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

## III.  Plaintiff's Age, Education, Work Experience and Medical History

Plaintiff was fifty-three years old on the date of the ALJ's decision.  (*R. at 20, 52.*)  She completed the ninth grade in school.  (*R. at 72, 279.*)  Plaintiff has past work experience as a laundry worker and a child-care worker.  (*R. at 67, 92, 281-282.*)  Plaintiff's medical records document treatment by First Choice Community Healthcare (hereinafter, "FCCH") during the period from October 31, 1996, to March 12, 2002;[7] treatment by the University Hospital at the University of New Mexico Health Sciences Center (hereinafter, "UNMHSC") during the period from October 11, 1996,

---

[6]If a claimant can show that his impairment meets or equals a listed impairment, and also meets the duration requirement in 20 C.F.R. §§ 404.1509 and 416.909 (requiring that an impairment have lasted or be expected to last for a continuous period of at least twelve months), he will be found disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) and 1520(d), and §§ 416.920(a)(4)(iii) and 920(d).

[7]*See R. at 173-209.*

to December 21, 2000;[8] treatment by the University Hospital at UNMHSC during the period from January 8, 2001, to January 30, 2001;[9] and treatment by the University of New Mexico Mental Health Center (hereinafter, "UNMMHC") during the periods from December 18, 2001, to January 23, 2002,[10] and March 22, 2002, to June 19, 2002.[11] The *Record* also includes a consultative examination by physician Eugene Toner, M.D., on May 5, 2001;[12] a consultative examination by psychiatrist Steven Sacks, M.D., on August 2, 2001;[13] a consultative examination by audiologist Eileen M. Ocampo, M.S., CCC-A, on May 8, 2002;[14] and a consultative examination by clinical psychologist J. Annette Brooks, Ph.D., on May 18, 2002.[15] On May 28, 2001, a state agency physician completed a "Physical Residual Functional Capacity Assessment" (hereinafter, "PRFCA") form for Plaintiff.[16] The assessment in the PRFCA form was affirmed by a reviewing state physician on May 28, 2001, and August 23, 2001.[17] On August 9, 2001, a state agency physician completed a Mental Residual

---

[8]*See R. at 210-222.*

[9]*See R. at 98-109.*

[10]*See R. at 159-172.*

[11]*See R. at 223-236 (this is a record of a hospitalization from 5/18/02-5/22/02), 237-247 (treatment from 3/22/02-6/4/02), 254-256 (this is a record of what is described as a "partial hospitalization program," see R. at 255, from 5/28/02-6/19/02).*

[12]*See R. at 111-116.*

[13]*See R. at 117-121.*

[14]*See R. at 248-249.*

[15]*See R. 250-253.*

[16]*See R. at 146-153.*

[17]*See R. at 153.*

Functional Capacity Assessment form for Plaintiff.[18] On the same date, the same physician completed a Psychiatric Review Technique form for Plaintiff.[19] Where relevant, Plaintiff's medical records are discussed in more detail below.[20]

## IV. Discussion/Analysis

Plaintiff contends that the ALJ erred in this case by: (1) failing to obtain the opinion of a medical advisor, pursuant to Social Security Ruling 83-20, 1983 WL 31249 (S.S.A.) (hereinafter, "SSR 83-20"), in determining the onset date of Plaintiff's disability; and (2) failing to consider the lay testimony of Plaintiff's daughter, Brenda Herrera, relevant to the onset date of Plaintiff's disability. *See **Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision** (Doc. 10)* at 1, 4, 9.[21] As relief, Plaintiff asks the Court to reverse

---

[18]*See R. at 122-125.*

[19]*See R. at 126-139.*

[20]The Court notes that in several instances in Plaintiff's supporting memorandum, Plaintiff's counsel has presented selections from the medical records in this case as if they were a physician's finding or diagnosis, when they are, in actuality, a physician's notation of the claimant's report to the physician of her complaints or previous diagnoses.  For example, at page six of the supporting memorandum Plaintiff's belief that "she may have been depressed throughout the marriage but certainly since the divorce in 1996" is presented as if it were a finding by Dr. Sacks when it is, instead, Dr. Sacks' notation of Plaintiff's reported belief.  Additionally, at the same page of the supporting memorandum Plaintiff's statement that she had been depressed since her divorce four years earlier is presented as if it were a finding of a mental health clinician rather than a record of Plaintiff's statement of the history of her condition.  This sort of mis-characterization is inappropriate and borders on misrepresentation of the record.  Plaintiff's counsel is reminded of his obligation to accurately present materials in the record to the Court pursuant to his duty of candor toward the tribunal under Rule 16-303 of the New Mexico Rules of Professional Conduct and the Lawyer's Creed of Professionalism of the State Bar of New Mexico.

[21]Plaintiff also makes a conclusory argument in her motion that the ALJ's decision is not supported by substantial evidence.  *See **Plaintiff's Motion to Reverse or Remand Administrative Agency Decision** (Doc. 9)* at 1.  However, the Court finds this argument to be waived because it is
(continued...)

this case or remand it to the Commissioner for further proceedings, including a new hearing. *Id.* at 11; *see also* **Reply in Support of Motion to Reverse or Remand Administrative Agency Decision** (*Doc. 12*) at 5. Defendant argues that the decision of the ALJ should be affirmed because he applied the correct legal standards and correctly determined the onset date of Plaintiff's disability based on substantial evidence. *See* **Defendant's Response to Plaintiff's Motion to Reverse and Remand** (*Doc. 11*) at 7.

### A. Determination of Onset Date

Plaintiff's onset date of disability is significant because it affects the period for which she can be paid benefits. *See* SSR 83-20 at *1. In Title II disability insurance cases such as this one, benefits can be paid for as many as twelve months before the month a claimant's application is filed. *Id.* Thus, the earlier the onset date, the longer the period of disability. *Id.* In Plaintiff's applications for disability insurance and supplemental security income benefits, she alleged an onset date of disability of January 1, 2001. (*R. at 52, 259.*) In the Disability Report submitted with her applications, Plaintiff alleged that her illnesses, injuries or conditions first bothered her on January 1, 1999, but did not make her unable to work until January 1, 2001. (*R. at 66*). Plaintiff's counsel later amended her alleged onset date to January 1, 1999, and then to January, 2000. (*R. at 93*, *96.*) In his administrative decision, the ALJ determined that Plaintiff's onset date of disability was August 2, 2001, which was the date of her consultative examination by psychiatrist Stephen Sacks, M.D., who concluded that Plaintiff suffered from "major depression, possibly recurrent." (*R. at 22-23.*)

---

[21](...continued)
not developed in Plaintiff's supporting brief or reply. *See Candelario v. Barnhart*, No. 05-1222, 2006 WL 308263, at *2 n.2 (10th Cir. Feb. 10, 2006) (unpublished) (conclusory argument mentioned in brief but not addressed is waived.)

Plaintiff contends that the ALJ's determination of her onset date is contrary to law because the ALJ failed to consult a medical advisor, pursuant to SSR 83-20, in determining her onset date. Plaintiff argues that there is an ambiguity in the medical evidence regarding her onset date because there is medical evidence describing the progression of her impairments of major depression, post-traumatic stress syndrome and pain since her divorce in approximately 1995, which suggests that she may have been unable to work prior to August 2, 2001, due to these impairments. *See* ***Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision*** (*Doc. 10*) at 4, 6, 8; ***Reply in Support of Motion to Reverse or Remand Administrative Agency Decision*** (*Doc. 12*) at 3. Plaintiff argues that because there is an ambiguity in the medical evidence related to her onset date, the ALJ should have consulted a medical advisor in determining her onset date.

SSR 83-20 contains guidelines for determining a claimant's onset date of disability. The ruling defines the onset date of disability as, "the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20 at *1. In determining the onset date of disability for disabilities of non-traumatic origin, SSR 83-20 requires that an ALJ consider the claimant's "allegations, work history, if any, and the medical and other evidence concerning impairment severity." *Id.* at *2. The ruling provides that the medical evidence "serves as the primary element in the onset determination." *Id.* SSR 83-20 recognizes that it is sometimes necessary to infer an onset date, in which case it provides that the ALJ should consult a medical advisor at the administrative hearing.[22] The courts

---

[22]SSR 83-20 provides, in relevant part:

With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining

(continued...)

10

have construed this provision of SSR 83-20 as requiring that an ALJ consult a medical advisor when the medical evidence of onset is ambiguous.[23]

---

[22](...continued)
the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. *In such cases it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.*

. . .

In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. *However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.*

. . .

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. *How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.* If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83-20 at *2-*3 (emphasis added).

[23]*See, e.g., Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995) (if evidence of onset is ambiguous, ALJ must obtain the assistance of a medical advisor); *Spellman v. Shalala*, 1 F.3d 357, 362 (5th Cir. 1993) ("[I]n cases involving slowly progressive impairments, when the medical evidence regarding the onset date of a disability is ambiguous and the Secretary must infer the onset date, SSR-83-20 requires that that inference be based on an informed judgment. The Secretary cannot make such an inference without the assistance of a medical advisor."); *Blankenship v. Bowen*, 874 F.2d 1116, 1122-1124 (6th Cir. 1989) (where claimant's mental impairments were of a progressive nature and onset date was not clear from medical evidence, ALJ was required to obtain additional evidence
(continued...)

In this case, the Court finds that the medical evidence regarding the onset date of Plaintiff's disability is ambiguous and, therefore, the ALJ erred in failing to consult a medical advisor at the administrative hearing pursuant to SSR 83-20 in determining her onset date. Accordingly, the Court will remand this case to the Commissioner for further proceedings. On remand, the ALJ must consult a medical advisor in accordance with SSR 83-20 in determining Plaintiff's onset date.

The medical evidence is ambiguous as to when Plaintiff's impairments of major depression, post-traumatic stress disorder and pain disorder became disabling, and suggests that she may have been disabled prior to August 2, 2001. Although there is no record of Plaintiff having been diagnosed, or treated, for any mental impairment prior to her consultative examination by Dr. Sacks on August 2, 2001, there is medical evidence suggesting that she suffered from, and may have been disabled by, her mental impairments prior to that date. Dr. Sacks noted in his history of Plaintiff's illness that Plaintiff believed she may have been depressed throughout her abusive marriage, "but certainly since the divorce in 1996." (*R. at 117.*) He also noted that Plaintiff's daughter, Brenda Herrera, reported to him that Plaintiff had lost almost forty pounds over the last month. *Id.* Dr. Sacks noted in his mental status examination that Plaintiff used to enjoy cooking "before the increase in her depression a few years ago." (*R. at 120.*) Dr. Sacks diagnosed Plaintiff as "experiencing a major depression, possibly recurrent," and assigned her a Global Assessment of

---

[23](...continued)
regarding progression of claimant's impairment and consult a medical advisor pursuant to SSR 83-20); *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991) (if medical evidence is not definite concerning onset date and medical inferences must be made, SSR 83-20 requires that ALJ utilize the services of a medical advisor and obtain all evidence available to make the determination); *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995) (medical advisor must be called, but only if medical evidence of onset is ambiguous).

Functioning (hereinafter, "GAF") score of "about 35," both currently and "during the last year."[24] (*R. at 120-121.*)  The report of consultative clinical psychologist J. Annette Brooks, Ph.D., who examined Plaintiff on May 18, 2002, also suggests that Plaintiff's mental impairments may have existed and been disabling prior to August 2, 2001.  (*R. at 250-253.*)  In her history of Plaintiff's illness, Dr. Brooks noted that Plaintiff reported her depression "to be longstanding," with the "onset of severe depression . . . four years ago, after the divorce."  (*R. at 251.*)  Dr. Brooks noted that Plaintiff reported having lost sixty pounds since her divorce, and the onset of auditory hallucinations (hearing voices calling her name when no one is around) approximately one year earlier.  (*R. at 251.*) Dr. Brooks' impression of Plaintiff was that she "is a slightly disheveled 53 year old female in acute distress with long-standing depression, exacerbated since her divorce 4 years ago."  (*R. at 253.*) Dr. Brooks diagnosed Plaintiff with severe major depression (with possible psychotic features), pain disorder (with both psychological and medical factors), and post-traumatic stress disorder (provisional).  *Id.*

Other medical records documenting Plaintiff's medical treatment, suggest that her mental impairments may have existed and been disabling prior to August 2, 2001.  A progress report for Plaintiff from FCCH dated May 18, 2000, noted that Plaintiff complained of increased fatigue and sadness since her separation from her husband four years earlier and of "feeling empty on the inside."

---

[24]A GAF score "is for reporting the clinician's judgment of [an] individual's overall level of functioning."  American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision, 2000, at 32.  A GAF score of 31 to 40 indicates "**Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."  *Id.* at 34 (bold and capitalization in original).

(*R. at 189.*) A medical clinic note for Plaintiff from the UNMHSC dated December 15, 2000, noted that she had lost twenty-three pounds since 1996. (*R. at 212.*) A behavioral health assessment from UNMHSC for Plaintiff dated December 18, 2001, noted that she reported having been depressed since her divorce four years earlier. (*R. at 167.*) An intake report from UNMMHC for Plaintiff dated January 3, 2002, also noted that she reported having been "depressed since [her] divorce . . . four years ago." (*R. at 166.*) A psychiatric triage report from UNMMHC for Plaintiff dated January 23, 2002, noted that she had experienced an increase in suicidal thoughts since her divorce. (*R. at 161.*) A psychiatric assessment from UNMMHC for Plaintiff dated January 23, 2002, noted that she reported having lost thirty to forty pounds since her divorce "3 yrs[.] ago." (*R. at 163.*) A psychiatric assessment of Plaintiff by UNMMHC dated March 25, 2002, noted that she had a history of untreated depression. (*R. at 240-241.*) A psychiatric assessment of Plaintiff by UNMMHC dated May 18, 2002, assessed her as presenting with depression for four years. (*R. at 229.*) A discharge summary report from UNMMHC for Plaintiff dictated on May 22, 2002, diagnosed her as suffering from "MAJOR DEPRESSIVE DISORDER-RECURRENT" and "POSTTRAUMATIC STRESS DISORDER," and noted that she had a history of depression. (*R. at 223.*) An assessment of Plaintiff by a physician with UNMMHC dated June 12, 2002, described Plaintiff as suffering from a chronic affective disorder with a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medical or psychosocial support," and with a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." (*R. at 246.*) A discharge summary from UNMMHC for Plaintiff dictated on June 20, 2002, noted that Plaintiff had

14

"apparently been depressed" for four years since her divorce and gave her a discharge diagnosis which included "[M]AJOR DEPRESSIVE DISORDER WITH PSYCHOTIC SYMPTOMS, SEVERE, RECURRENT," a history of post-traumatic stress disorder, and "CHRONIC PSYCHOLOGICAL PROBLEMS." (*R. at 255.*)

Some of the medical evidence of Plaintiff's pain disorder also suggests that she may have been disabled prior to August 2, 2001. A progress report for Plaintiff from FCCH dated May 4, 2000, assessed Plaintiff with left shoulder pain from possible shoulder impingement syndrome and left knee pain of unknown etiology. (*R. at 190.*) An emergency center log report for Plaintiff from the University of New Mexico University Hospital dated November 9, 2000, noted that Plaintiff presented with bilateral leg pain that she reportedly experienced off and on for one year which started as a sharp pain in both hips and made her unable to move. (*R. at 215.*) A clinic note for Plaintiff from University Hospital documented a visit to Wilmer L. Sibbitt, M.D., Professor of Rheumatology, on December 15, 2000, and noted that Plaintiff presented "with a one year history of generalized 'achiness' and fatigue," and reported that she "feels she hurts all over in her bone," with "occasional episodes of discomfort in her left shoulder and lower back, where she feels some immobility." (*R. at 212.*) This clinic note recorded that Plaintiff brought a referral from her primary care physician "stating that she has a positive rheumatoid factor in clinic,"[25] and showed that Dr. Sibbitt assessed Plaintiff as "likely with some type of arthritic disease." (*R. at 212-213.*) On January 8, 2001, Dr. Sibbitt wrote to Plaintiff's primary care physician assessing Plaintiff with "vague arthralgias," and

---

[25]"Rheumatoid factor" is a test to measure the presence and level of rheumatoid factor in the blood which is used primarily in the diagnosis of rheumatoid arthritis. *See* Medline Plus Medical Encyclopedia, a service of the U.S. National Library of Medicine and the National Institutes of Health, www.nlm.nih.gov/medlineplus/ency.

stating that it was unclear whether it was "fibromyalgia, Reiter's syndrome or rheumatoid arthritis." (*R. at 102.*) On January 12, 2001, Dr. Sibbitt wrote again to Plaintiff's primary care physician requesting follow-up tests and stating that Plaintiff "may well have rheumatoid arthritis." (*R. at 100.*) On January 30, 2001, Plaintiff underwent a bone density test and was diagnosed with osteopenia of the lumbar vertebrae. (*R. at 99.*) A progress report for Plaintiff from FCCH dated September, 2001, noted complaints by Plaintiff of joint pain for years, and a diagnosis of depression, arthralgias and possible arthritis. (*R. at 184.*) X-rays of Plaintiff on October 8, 2001, indicated diffuse osteopenia in her left hand and osteoarthritis in a joint in her left hand. (*R. at 198.*) The x-rays also indicated diffuse osteopenia in her right hand and osteoarthritis in a joint in her right hand (*R. at 199*), osteoarthritis involving her inferior, left sacroiliac joint, and degenerative disc disease involving her L4-5 disc space (*R. at 200*).

Based on the foregoing, the Court finds that the medical evidence of the onset date of Plaintiff's disability is ambiguous and thus it was error for the ALJ not to consult a medical advisor pursuant to SSR 83-20 in determining her onset date.

### B.  Lay Testimony of Plaintiff's Daughter

Plaintiff's daughter, Brenda Herrera, testified at the administrative hearing on March 21, 2002. (*R. at 288-291.*) Plaintiff contends that ALJ erred in failing to consider her lay testimony relevant to the onset date of Plaintiff's disability.

Brenda Herrera gave the following testimony at the administrative hearing about her mother's eating habits, weight loss, and general condition:

> Well, the last, I think, it's been about four years I've been seeing a
> change in my mom's eating habits. The last year it's gotten worse.
> She's lost, I would say about 40, 50 pounds. She's just sleeping a lot.
> She's constantly in pain. And I'm the one who had to take her to the

16

> doctors because she wouldn't go because she felt like it was a burden on us. You know, and because we're supporting her right now, me and my sisters. And I told her it's no burden. I said, I'm willing to help you, if I can. She doesn't eat unless I make her meals. She won't get up unless I go to her house to wake her up. This Tuesday she talked about wanting to kill herself because she felt like she was a burden on me and my sisters. She's always in pain, always complaining about her bones, her back, her neck. Her eating habits are horrible. She won't eat unless I make her something or take her something by.

(*R. at 288-289.*) In his decision, the ALJ states that he made "a thorough evaluation of the entire record" and that he made his findings after "consideration of the entire record." (*R. at 17, 21.*) However, the ALJ's decision fails to mention that Brenda Herrera testified at the hearing and fails to discuss her testimony. (*R. at 17-23.*)

The Social Security regulations provide that evidence from non-medical sources, including relatives, may be used to show the severity of an impairment and how it affects a claimant's ability to work. *See* 20 C.F.R. §§ 404.1513(d)(4) and 416.913(d)(4). Moreover, SSR-83-20 provides that when a claimant's onset date of disability is inferred and "reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available," then "[i]nformation may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition." SSR 83-20 at *3. The Tenth Circuit Court of Appeals requires an ALJ to consider lay testimony. *See Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) (ALJ not required to make specific, written findings regarding a lay witness's credibility as long as it is clear from his decision that he has considered the witness's testimony). In this case, although the ALJ's decision states that he considered the entire record in making his decision, it is not apparent that he considered Brenda Herrera's testimony which was

17

relevant to Plaintiff's onset date of disability. Therefore, on remand, the ALJ must consider her testimony in determining Plaintiff's onset date.

## V. Conclusion

In conclusion, the Court **FINDS** that the ALJ erred in failing to consult a medical advisor at the administrative hearing regarding the onset date of Plaintiff's disability, and in failing to consider Brenda Herrera's testimony in determining the onset date of Plaintiff's disability. Accordingly, the Court will **GRANT** Plaintiff's motion and **REMAND** this case to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

**WHEREFORE, IT IS HEREBY ORDERED** that Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision* (*Doc. 9*) is **GRANTED,** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order. A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**